Robert M. BYRNES, Sr., Plaintiff,

v.

JETNET CORPORATION, a Pennsylvania corporation, Defendant,

and

GOLDEN NEEDLES KNITTING, INC., a North Carolina corporation, Defendant and Third-Party Plaintiff,

v.

MACFIELD TEXTURING, INC., a North Carolina corporation, Third-Party Defendant.

No. M–86–35.

United States District Court, M.D. North Carolina.

July 11, 1986.

Robert J. Lawing, Winston-Salem, N.C., Harvey B. Jacobson, Jr., Michael R. Slobasky, Washington, D.C., Leslie W. Jacobs, James B. Niehaus, Cleveland, Ohio, for plaintiff.

Charles B. Park, III, Joell T. Turner, Charlotte, N.C., for third party defendant.

## ORDER

RUSSELL A. ELIASON, United States Magistrate.

This matter comes before the Court on plaintiff's motion to compel deponent (now third-party defendant) Macfield Texturing, Inc. (Macfield) to produce subpoenaed documents and to answer certain questions propounded upon oral deposition in this District, pursuant to Rules 45(d) and 37(a), Fed.R.Civ.P. The underlying action for patent infringement against defendant Golden Needles Knitting, Inc. (Golden Needles) is pending before the United States District Court for Nebraska.

In August 1985, a subpoena *ad testificandum* and *duces tecum* issued from this District and was served on Macfield. It directed Macfield to produce designees for oral deposition September 5, 1985 and to produce documents as requested in attached schedules. Macfield produced designees for deposition and many of the requested documents. However, designee William Thomas refused, on advice of counsel, to testify in connection with discussions between Macfield personnel and Golden Needles personnel, in the presence of their respective attorneys, regarding the subject matter of the underlying lawsuit. Macfield claims attorney-client privilege. Thomas also refused to disclose names of certain Macfield customers based on a claim of confidentiality. In addition, Macfield refused to produce certain documents, asserting attorney-client privilege or work product protection, and refused to produce certain invoices and price lists alleging confidential trade information. The deposition stopped, and plaintiff filed the instant motion.

### A. Procedural Objections

■ Before proceeding to the merits of plaintiff's motion, the Court considers Macfield's procedural objections. Macfield argues that it was not a party to the underlying action at the time the discovery in issue was sought, but has since been made a party by third-party complaint, and, therefore, the motion should be considered in the Nebraska forum. Plaintiff responds that this forum is appropriate because the subpoena was issued here, the deposition was conducted here, and the instant motion was filed prior to Macfield becoming a third-party defendant. Additionally, plaintiff points out that Macfield contests *in personam* jurisdiction in Nebraska. After considering the matter, the Court finds the forum chosen by plaintiff for the instant motion is proper and, in part, necessary.

Rule 37(a)(1), Fed.R.Civ.P., provides that a motion to compel discovery from "a party may be made to the court in which the action is pending, or, on matters relating to a deposition, to the court in the district where the deposition is being taken." As to non-parties, the Rule provides that a motion to compel "shall" be made to the court where the deposition is being taken. Therefore, under Rule 37, a motion to compel deposition answers is properly heard in the court where the deposition takes place, regardless of Macfield's party or non-party status, and at the time the motion was made, was required to be filed here. The motion to compel production of documents, on the other hand, is based on enforcement of a subpoena *duces tecum*, and *must* be decided in this District. Rule 45 specifically provides that objections to subpoenas be considered by the issuing court. Rules 45(d)(1) and (f), Fed.R.Civ.P.; 8 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2458, at 442 (1971 & Supp.1986). Thus, the instant motion to compel is prop-

erly before this Court, and the change in status of Macfield from non-party to party does not make it inappropriate for this Court to consider the matter.

Other reasons also persuade the Court that it should decide this matter. Even as a non-party, Macfield could have requested intervention of the Nebraska court by seeking a protective order pursuant to Rule 26(c), Fed.R.Civ.P., which allows such motion to be brought in either the court where the action is pending *or* where the deposition is taken. Then, Macfield would have unquestionably submitted itself to the jurisdiction of the Nebraska court. It did not and as it now stands, if Macfield successfully contests jurisdiction in Nebraska, and if this Court declines to decide the controversy, plaintiff may well be left without a court to decide the controversy.[1] Nor has Macfield requested that this controversy be transferred to Nebraska and thereby submitted itself to that court's jurisdiction.[2] Moreover, because of the potential for delay, the Court would be reluctant to grant the transfer absent a showing that the dispute presents complex or unusual discovery questions which the transferee district would be obviously better suited to decide. Macfield has neither requested a protective order, a transfer, or otherwise submitted itself to the jurisdiction of the Nebraska court and, therefore, this Court should decide the motion.

Macfield next argues, in respect to the motion to compel production of documents, that plaintiff failed to timely move for an order in response to its objections "before or during the deposition" as required by Rule 45(d)(1), Fed.R.Civ.P. It contends that the matter was "closed" after the deposition and should not be allowed to be asserted over six months later. In response, plaintiff states the delay was caused by Macfield's lack of cooperation and the fact the transcripts of deposition were not completed until October 1985. He also states that the deposition was simply adjourned or continued for ruling on Macfield's objections and was not closed.

█ Rule 45(d)(1) provides that when objection has been made to the production of designated materials, the party serving the subpoena may move for an order "at any time before or *during* the taking of the deposition" (emphasis added). To obtain such an order during the deposition, it is obviously necessary to adjourn it immediately or after other matters have been completed. Rule 37(a)(2), Fed.R.Civ.P. *Compare* Rule 30(d), Fed.R.Civ.P.; 8 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2116, at 427 (1971 & Supp.1986). The deposition transcript clearly shows that the proceeding was simply adjourned by plaintiff for ruling on Macfield's claims of privilege and confidentiality, with Macfield expressly reserving its right of cross-examination. (Tr.109.) On these facts, the

---

1. Without personal jurisdiction over Macfield, the Nebraska court would be unable to impose sanctions against it. 8 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2287 (1970).

2. Although some courts have entertained the idea of transferring a discovery dispute involving a non-party to the court where the action is pending, *Socialist Workers Party v. Attorney General of U.S.*, 73 F.R.D. 699 (D.Md.1977) (non-parties costs paid by party); *see In re Burlington Northern, Inc.*, 679 F.2d 762, 766 n. 6 (8th Cir. 1982) (collecting cases pro and con); the emerging consensus is that the matter may not be transferred over objection from a non-party because the transferee court lacks jurisdiction. 8 C. Wright & A. Miller, *Federal Practice and Procedure*, §§ 2287 nn. 18 and 19, at 287–88 (Supp. 1986) (collecting cases); *S.E.C. v. Paradyne Corp.*, 601 F.Supp. 560, 561–62 n. 1 (D.Md.1985).

To the extent the non-party seeks a ruling by the court where the action is pending, it has been held the parties do not have a right to prevent transfer. *S.E.C. v. Paradyne Corp., supra.* However, the Court cautions that although transfer of non-party discovery disputes has been premised on either 28 U.S.C. § 1407 or 28 U.S.C. § 1404, this Court finds both sections inappropriate. Section 1407 requires a multidistrict judicial panel and section 1404 applies only to "action[s]." This Court is of the opinion that a transfer might be possible—based on the exercise of the Court's inherent powers, *cf.*, 8 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2287 at 782–83 and n. 18 (1970). However, as to non-parties, transfer is limited to situations where the non-party has moved for a protective order under Rule 26(c) or consents to the transfer. *See infra*, text at 69–70.

Court finds plaintiff has properly moved for the instant order "during the deposition." Although there has been a substantial delay of six months in seeking the order, the delay is partially excused by plaintiff's attempt to resolve the dispute out of court. Local Rule 205(c) requires such efforts prior to seeking judicial relief. *See In re Wheat Farmers Antitrust Class Action,* 440 F.Supp. 1022, 1025 n. 1 (D.D.C. 1977). To the extent it is not excused, the delay standing alone, is not sufficiently egregious to stand in bar to the instant motion. Macfield has not pointed to any prejudice or hardship it will suffer as a result of the delay. Discovery is evidently still continuing in Nebraska. *Id.* Therefore, this procedural objection is denied.

### B.  Attorney-Client Privilege Claims

Turning to the merits of the motion, the Court first considers Macfield's claim of attorney-client privilege in respect to plaintiff's motion to compel deponent Thomas to testify as to joint discussions between Macfield and Golden Needles personnel with their attorneys. There were apparently at least three such meetings at which attorneys for both Golden Needles and Macfield discussed their views as to the validity of the patents in issue and their infringement. Because the two sets of attorneys and their clients exchanged information with each other, plaintiff claims any privilege was waived based on the presence of the other party. At the deposition, Macfield alleged a "community of interest" between itself and Golden Needles. Plaintiff says the relationship was merely a business one. As evidence of a lack of common interest, plaintiff proffers the third-party complaint served on Macfield by Golden Needles.

Macfield rejoins that the joint discussions were to consider their common interests in the infringement action. It asks the Court to look to the proposed, but rejected, Supreme Court Standard 503(b) of the Proposed Federal Rules of Evidence, and says the opinions of Golden Needles' counsel during these meetings were privileged due to their being made in furtherance of the rendition of legal services to Golden Needles and those reasonably necessary for transmission of the communications.

In an action asserting a federally based cause of action, the attorney-client privilege is a matter of federal common law. Rule 501, Fed.R.Evid. The Supreme Court Standard cited by Macfield, in large part, restates the common law and while not binding, provides a helpful guide. *United States v. (Under Seal),* 748 F.2d 871, 874 n. 5 (4th Cir.1984). Standard 503(b)(3) provides that the attorney-client privilege applies to communications made by the client or his lawyer to a lawyer representing another in a matter of common interest, and in accord with the common law, recognizes a privilege both for inter-attorney communications and joint conferences where the client communicates with the other attorney directly. The presence of the other client and his respective attorney does not destroy the privilege, so long as the disclosure is in the furtherance of the rendition of professional services and refers to the matter of common interest. Extraneous comments are not within the privilege. 2 J. Weinstein and M. Berger, *Weinstein's Evidence,* § 503(b)[06], at 503–59–60 (1985 & Supp.1986).

The Court cannot determine whether the joint conferences between Macfield and Golden Needles should be deemed privileged because Macfield has failed to establish the necessary factual predicate. The proponent of the attorney-client privilege has the burden of demonstrating the applicability of the privilege. *E.g., United States v. (Under Seal), supra,* at 876. It is incumbent upon the proponent to specifically and factually support his claim of privilege, usually by affidavit, to satisfy this burden, and an improperly asserted privilege is the equivalent of no privilege at all. *International Paper Co. v. Fibreboard Corp,* 63 F.R.D. 88, 94 (D.Del.1974). Macfield is required to disclose the identity and position of all in attendance at the joint meetings, and to establish that the meetings were, in fact, between attorneys and their respective "corporate clients," as op-

posed to simply witnesses. *See Chubb Integrated Systems v. National Bank of Washington,* 103 F.R.D. 52, 65–66 (D.D.C. 1984) (corporate client); *Brown v. Hart, Schaffner & Marx,* 96 F.R.D. 64, 68 (N.D. Ill.1982) (witnesses). Additionally, Macfield is obligated to explicitly define the nature and scope of the interest (identical or merely similar) it allegedly has in common with Golden Needles and specify the extent any legal interests overlapped with commercial interests or other conversations. *See Duplan Corporation v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1172 (D.S.C.1975). Notwithstanding, Macfield relies solely on counsel's conclusory allegation that the communications were privileged based on the common interest in the patent litigation. This is clearly insufficient and, as a consequence, Macfield has failed to establish a basis for asserting the attorney-client privilege.

■ Next, the Court considers plaintiff's motion to compel certain documents asserted by Macfield to fall within the attorney-client privilege.[3] Plaintiff specifically seeks to discover two documents: handwritten notes from unidentified Macfield personnel referring to an opinion by Golden Needles' counsel, and a letter from Macfield employee Thomas to Golden Needles' counsel.[4]

Macfield asserts that the two documents are protected by the same attorney-client privilege asserted for the oral communications at the Macfield and Golden Needles joint meetings. Based on the Court's prior findings, it rejects this assertion. Moreover, as to the handwritten notes of Macfield's employees, even if the Court had originally found the information privileged, internal restatements by the client in an unprivileged communication ends or waives the privilege. *United States v. International Business Machines,* 71 F.R.D. 376, 378 (S.D.N.Y.1976); *Leucadia, Inc. v. Reliance Ins. Co.,* 101 F.R.D. 674, 677 (S.D.N.Y.1983).

## C. Confidentiality Claims

The Court next considers that aspect of plaintiff's motion seeking to compel production of documents and further deposition answers to inquiries for which Macfield asserts a claim of trade information confidentiality. First, plaintiff seeks to compel Thomas to testify to whom Macfield solid yarn styles 5179 and 5518. Macfield asserts that the identity of its customers is highly confidential, as well as irrelevant to the underlying action. In reply, plaintiff argues the information is relevant as it will provide information to establish the industry-wide respect shown for his patents, whether sales would have been made by plaintiff but for Golden Needles' infringement, whether other entities having a business relationship with Golden Needles have purchased the yarn, and whether Golden Needles' infringement was willful.

Second, plaintiff seeks to compel production of invoices of yarn shipments from Macfield to Golden Needles and price lists of yarn styles 5179, 5518, and 5573. Plaintiff asserts this information is relevant to costs and profits of Golden Needles, as well as the quantity of infringing gloves manufactured. Macfield argues that the price lists were not within the scope of the subpoena, but only informally requested by plaintiff, that the invoices are confidential and, in any event, can be obtained from Golden Needles.

---

**3.** Plaintiff mentions work product protection as well, but fails to argue in connection with this claim. The Court, therefore, finds it superfluous. In addition, the claim appears to be without any merit.

**4.** Plaintiff also generally seeks seven other documents, but does not appear to press the issue. These items include six letters between C.R. Harris of Macfield and David Rabin, an attorney for Macfield (pleading no. 4; Ex. B, list # 's 1–6), and a letter from Charles Park, attorney for Macfield, to Dalton McMichael of Macfield (pleading no. 4; Ex. B, list # 8). Of these seven documents, plaintiff seeks only portions relevant to joint meetings between Macfield and Golden Needles. Macfield ignores the seven documents, apparently under the mistaken impression they are not sought to be compelled. In this posture, the Court will grant plaintiff's motion to compel these documents as to the joint meeting portions.

There is no absolute privilege for trade secrets or confidential trade information. To resist a subpoena for deposition and production of documents at deposition based on a claim of trade confidentiality, the proponent must apply for a protective order pursuant to Rule 26(c)(7), Fed.R. Civ.P.[5] The proponent has the initial burden of establishing that the information sought is confidential information and that its disclosure might be harmful.[6] If this burden is met, the party seeking disclosure must establish both relevancy and necessity for the disclosure. The Court then balances the need for confidentiality against the injury from disclosure. *Centurion Industries, Inc. v. Warren Steurer, Etc.*, 665 F.2d 323, 325–26 (10th Cir.1981). Applying this standard to the instant case, the Court finds that the proponent has failed to meet its initial burden.

Macfield asserts the customer names and invoices are confidential and relies upon the scope of the subpoena for protection of the price lists. No affidavits have been filed in support of the claim of confidentiality and Macfield simply relies on its conclusory allegations. Courts must insist "on a particular and specific demonstration of fact, as distinguished from stereotyped or conclusory statements, in order to establish good cause." 8 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2035, at 265; *see e.g., Reliance Insurance Co. v. Barrons*, 428 F.Supp. 200, 202 (S.D.N.Y.1977). Macfield has, therefore, failed to meet its initial burden of showing confidentiality.

The Court finds no merit in Macfield's claim of irrelevancy. Relevancy is construed more broadly for purposes of discovery, Fed.R.Civ.P. 26(b)(1), and plaintiff has made a sufficient showing under this standard. The Court has no difficulty in finding the price lists to be within the scope of the subpoena. Finally, the Court finds no merit in the claim plaintiff should be required to obtain the invoices from the defendant Golden Needles as opposed to Macfield, who is only the third-party defendant. This procedure would unduly burden the discovery process by permitting wasteful controversy over whether a party actually has the documents and whether they are exactly the same as those sought. Only in the face of a clear showing of hardship or burden should a court consider requiring discovery be first sought from a party as opposed to from a tangential or non-party.

IT IS ORDERED that plaintiff's motion to compel be granted and that Macfield's designee, Mr. William Thomas, testify at deposition to joint discussions between Macfield and Golden Needles personnel and their respective counsel.

IT IS FURTHER ORDERED that Macfield's designee, Mr. William Thomas, testify to Macfield's customers as to whom yarn styles 5179 and 5518 used in the allegedly infringing product was sold.

IT IS FURTHER ORDERED that Macfield produce for plaintiff's copying and inspection, its price lists for yarn styles 5179, 5518, and 5573.

IT IS FURTHER ORDERED that Macfield produce subpoenaed items numbers 7 and 9 in their entirety.

---

**5.** Rule 45(d)(1), Fed.R.Civ.P., permits a person to resist a subpoena *duces tecum* by serving the party with an objection within ten days or prior to the deposition. Macfield did this. However, it did not formally move for a protective order either for the deposition or the documents once plaintiff moved to compel compliance with the subpoena as it was required to do by Rule 26(c) and by Rule 45(d)(1) which incorporates Rule 26(c). While the Court would be disposed to rule against Macfield on this ground alone, *see* 8 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2035 at 263 (1970) and § 2116 (Supp. 1986), plaintiff has not raised the issue and, in

any event, Macfield has failed to show it is entitled to relief.

**6.** Relevant considerations for determining confidentiality include: (1) the extent to which information is known outside the business; (2) the extent to which information is known to those inside the business; (3) the measures taken to guard the secrecy of the information; and (4) the value of the information to business competition. *E.g., Reliance Insurance Co. v. Barrons*, 428 F.Supp. 200, 203 (S.D.N.Y.1977).

IT IS FURTHER ORDERED that Macfield produce those portions of subpoenaed items 1–6 and 8 which relate to the joint discussions between Macfield and Golden Needles personnel with counsel.

IT IS FURTHER ORDERED that plaintiff is the prevailing party and may be entitled to obtain his attorney's fees and costs in moving for and obtaining the instant Order. If the parties cannot agree on the amount, plaintiff may within thirty (30) days move for a show cause order and attach an affidavit justifying the amount sought.